22-1145, U.S. General v. Guideone Mutual Insurance Company. Mr. Rubel. Good morning. May it please the Court. I need to set the context of this case real briefly to summarize my arguments. Under an insurance policy here, the insured or the assignee, which is the appellee, U.S. General, is to give notice to the carrier of damage that it believes was caused by a covered loss. The carrier then investigates, the number is agreed upon, and then it is paid by the insurance company. That is the ACV number. If the insured wishes to go ahead and complete repairs, there is another number negotiated, but that number is held by the insurance company until the work is repaired. In this case, there were multiple instances where damage was cited by the appellee. Guideone went out, looked at each one of those, numbers were negotiated, and ultimately, in January of 2018, all damage that was claimed to have occurred because of the hail loss was negotiated and an ACV number was paid. Work continued during 2018. In May of 2018, a lawsuit was filed and the matter went to court. In October of 2018, the work was finished. So, the policy requires the insured to identify it, and RCV is then not to be paid until work was completed, which was after the lawsuit was completed. Now, ultimately, everything that was agreed upon as being caused by the hail loss was paid, except for two items, the HVAC and electric conduit, which were items that were asserted as wrongfully denied during the trial. There was no claim. Well, had the claim with respect to those items been presented to the insurance company before suit was filed? Yes. How long before suit was filed had they demanded that? They were part of the January assertion, as I understand it, I mean, as I recall, sir. And the complaint was filed what month? May of 2018, five months after the ultimate negotiated settlement of damage under the hail. Okay. Okay. So, suit was then brought. The claims were then tried to the jury, and there were two claims essentially that were brought to the jury, and they made their decision. One was for breach of contract, and the other was for unreasonable delay, statutory bad faith under 1115 and 1116 of Colorado statutes. The jury decided that there were no damages, no general damages for the breach of contract claim. That would include then that there were no delayed damages under a breach of contract, because delay of the performance of the contract that resulted in damages would have been general damages, which the jury would have had to find and entered into the verdict form. Could I just jump in? Certainly. Because I had a question about your last point. Certainly. So, this breach of contract claim, claim one, that was tried to the jury, that concerned the dispute over the HVAC and electric conduit. Is that correct? It would include any breach of the contract, which would include any damages under the breach of contract for delay. Well, but that was all that was left, wasn't it? Just the $70,000 for the HVAC and electric conduit. That was the only items that were claimed as wrongfully denied, but not for wrongful delay. All right. So, my question is this. How can the outcome of that claim, going to the HVAC electric conduit, limit the recovery for unreasonable delay when that latter claim, the second claim, concerned delayed payments for other types of repairs? As I understand your question, you are saying that at the time the matter was submitted to the jury, the breach of contract delayed damages were not presented. And I do not think that is correct. The breach of contract for a delay was presented to the jury, and as a result the general damages number was zero, which means not only did they find that there was no breach of contract for a delay or for denial, but also that there was no damages for delay. And you're saying that because if you don't have to pay, because there was no breach for failure to pay, then there couldn't be any breach for delay in payment. Well, for example, in this situation. It's not improper to delay paying stuff you don't owe. Is that essentially your argument? Well, no. The argument is that if, in fact, there was a delay in payment and it resulted in increased cost of labor, increased cost of materials, or something like that, that would be part of a breach of contract damages claim that would be recoverable in this instance. Yeah, but the delay in payment wasn't for the HVAC repair. It was for the other repairs that were eventually paid. Well, we don't know that, because if, in fact, there was a delay in payment,  breach of contract all the time has delay components. In construction litigation, for example, if, in fact, your performance is not timely and it results in damages such as increased materials or something like that, you are entitled to pursue a claim for those damages. So is it fair to characterize what you're arguing is that the verdicts were inconsistent? You fancy? Yes. There's no way there could be no contract breach and still be damages for delay. Yes. When do you have to deal with that? If there's an inconsistency in the jury verdict, don't you have to bring that to the attention of the judge before the jury is excused so you can then get the jury to straighten it out if there really is an inconsistency? And by failure to raise that until after the jury is excused is a waiver. Doesn't that preclude your claim here? Certainly that would be the argument that would be made. Well, it certainly was. Well, I understand. I can see what's wrong with you. I understand. I can see what's wrong with you. But I think what we have to look at is we have to look at the verdict form that was provided to the jury, and that's really where the problem is. It's because the form was submitted so that you would have what was the breach of contract here, damages. And the jury was to make a decision whether or not there was a breach of contract, which they said yes. Were there any damages, which they said no. And then they were allowed to make nominal damages. Then what happens is that under the form, whatever was an unreasonable delay drops down into the next item, and that is was there an unreasonable delay damages. And they said yes. And what the court decided to do in light of the question of whether or not the filing of the lawsuit results in the stay of the bad faith ones is to say, I'm going to break it up into two parts, and then we can remove whichever part on appeal to fix this problem. So what we're looking at here is the jury is making a decision. Go ahead, I'm sorry. No, the jury is making its decision, and we're left coming here or to the court or here to say, okay, in light of what the jury decided here, what did it mean for them to do what they did? Yeah, and we're left with two things that I think you could say are inconsistent. My guess is that when the jury looked at the instruction for how much you get for breach of contract and asked if you're not compensated, they saw that the plaintiff was getting compensated by the delay, so they were fully compensated in a way, and that's why they said zero damages. But that's speculation. The problem is we don't know, so we just take the jury verdict as it is and realize that there may be inconsistencies, and we'll just consider each part of the verdict to be valid because the opportunity to clarify what was going on has disappeared because no objection was made to the inconsistency before the jury departed. And I think that's traditional, and it makes sense to me. Tell me what I'm missing. Well, I think what we're missing is that it was a plain error in the jury form. You know, the matter was done just exactly like the People v. Laugard case where the judge says this is how we're going to do it. Does that look okay to everyone? Say, yes, fine. The jury could have put in, why was it the jury form's problem if the jury, say, thought that there was a breach and they thought it was worth this much, but because they, misunderstanding the instructions, thought we can't award damages for the breach because the insured is getting the money through the delay damage award, so they don't award it. But they could have answered the breach of contract damages question correctly, and then we wouldn't have this problem. Or they could have answered the question about delay damages differently, and we wouldn't have any inconsistency. Well, certainly we see from the questions. I don't see why the jury verdict form is the problem. It's how it was answered that's the problem. There's nothing. Well, we certainly see from their questions that they were confused as to what was going on. And that clearly is a problem that we need to see in this situation. And what the point being is, is that while the court crafted this instruction and all the counsel agreed that this was a good way to do it, it left it open for the jury to answer the questions in such a way that aren't supported by the evidence or make no sense. For example, the figure after the filing of the lawsuit number is less than any amount that was ultimately paid under the agreement that was reached by the parties. We just have a form that for whatever good will and intent we wanted. Why didn't you complain at the time of the verdict? In large part, Your Honor, because when we looked at the verdict, we were trying to sort out what it was, and they excused the jury, and then they were gone. I mean, the verdict was read, the judge said thank you very much, and the jury was gone. When you sit and look at it, that's when you start noticing that there's problems and inconsistencies that have to be addressed, that now the jury's gone, you can't. So you leave it to the judge to say, okay, look, Your Honor, we had a problem. What would you say, hypothetically, if you didn't appeal, but the insurance company appealed and said this is inconsistent, if we're getting delayed damages, we should have gotten damages for breach of contract? You would have said, well, too late to argue that, wouldn't you? No, I probably would have argued that there wasn't evidence to support it. Okay. Well, go ahead with your argument. No, I appreciate that, Your Honor. So, but the question is, of course, is that under Borrega, we see that the elements that need to be proven here for delay damages are different than what is necessary for an unreasonable delay. And if, in fact, there is not evidence for a delay claim, it just follows that you do not have the basis for a claim for unreasonable delay. Delay is delay. Whether it's unreasonable is the extra element of Borrega and the statute say is necessary for a recovery of unreasonable delay damages under the bad case statute. I'm sorry, it looked like you had a question. So if you're sued for breach of the insurance contract, you can get not just the amount that should have been paid under the contract, but also any damages from delay, even if it was just plain negligence? Well, not negligence. I mean, under the contract, you get certain damages. Yes, but under the contract, can you get damages for not being paid promptly by the insurance company? Yes. Are there provisions in the contract that allow for that? Yes. That's all part of the covenant of good, under the contract, common law bad faith, statutory bad faith. And what we see that on is, for example, in the Goodson case where they basically say, okay, what do you do in a situation where, for example, a UIM claim where they sit there and say, well, yeah, you openly paid my medical bills, but you didn't timely pay them. Do you have a claim for an unreasonable delay there? Yes, because it's most of the stress. Delayed damages, which cause emotional distress, are recoverable in those circumstances. Thank you. Real quick in the last one, I also think, you know, the evidence is that under the Buchholz case, any damages after the filing of the suit are not recoverable because we did not have any of the ongoing bad faith that's necessary predicate for recovery here. Thank you. Mr. Bache? Yes, sir. Did I remember the pronunciation correctly? Yes, sir. It's nice to see you. You too, Justice Matheson. And it's nice to meet you, Justice Tim Kovach. Let me be the first one to say good afternoon. It's been a long day. And may it please the court whenever the court is ready to. We're ready. We're ready. Not too long for us yet. If you don't mind, I'd like to kind of look backwards from the arguments that counsel just raised. Number one, there's nothing in the contract that allows recovery of any other damages except for contractual damages. So there's nothing in the contract that says you get interest for delays. There's nothing in the contract that says you get, as a result of a breach of the contract, any additional damages other than what you're presenting under the contract, what's covered under the policy. I think the appellant's counsel misspoke on that. It may have misunderstood the question, but I just wanted to address Justice Hartz's question there. As far as Justice Matheson, I wanted to go back to- We're judges. There's no justice on the Court of Appeals. Sorry about that, Judge. Judge Matheson, I just wanted to point out and clarify your question about the damages were separate. And the facts that were presented to the jury in this case presented the two issues of about $70,000 for the electrical conduit and the HVAC unit. That evidence was never presented- It was separate and distinct evidence that was presented for the statutory bad faith case. And the way that evidence was submitted was through the habitual conduct of the insurance company on issuing low-ball payments, failing to investigate the damages, ignoring its own engineer that it owed for roofing systems at the property for months. In addition to that, the evidence was submitted that a check was promised. These are placement cost benefits that counsel's alluding to. That check that was promised on April 4th of 2018 did not arrive until October of 2018. So there was an email that was submitted to the jury from an adjuster named Jeff Thompson who told the insured and their contractor that, hey, the work is done, you're under contract, we're going to release these benefits to you, and we're going to send you a check for about $100,000 today. Quote, check in the mail. The check wasn't in the mail. And that was dated when? April 4th of 2018, a month before the lawsuit was filed and six months before the check arrived. And that goes to the next point. Colorado law does have an exception to the duty of good faith and fair dealing that does continue throughout the entire course of conduct in relationship between an insured and insurer with a slight exception of the duty to negotiate. In this case, there was no evidence presented that as a failure of a duty to negotiate, there was bad faith conduct. Instead, the evidence that was presented was relevant to the entire course of conduct, which under every case cited by both the appellant and the appellate is consistent with Colorado law. Well, admissibility of that evidence is settled. But that's for the purpose of supporting a claim of bad faith before litigation begins. Do you have any authority for making a finding of bad faith after the lawsuit is filed? The Colorado cases seem to say that once the case is filed, bad faith is no longer on the table. You can't be guilty of bad faith as long as you're conducting a reasonable defense of the case. I'm just stating the law. Respectfully, sir, if I could direct your attention to the Sutherland case. That's a great example of a workers' comp matter where there was payment that was delayed prior to the lawsuit being filed for workers' comp benefits. And then there were benefits that were paid after the lawsuit was filed. And the court found that the bad faith award of those payments, both pre-suit and post-suit, was allowed. And the reason being is as long as it's to show an entire course of conduct. Because otherwise, it would be a get-out-of-jail-free card. It's admissible to prove it's evidence of the bad faith that was going on. The fact that you continue to delay reinforces the claim that the delay before the suit was filed was filed in bad faith. But did it give any bad faith damages for the period of time after litigation began? Because that seems to be, there's a distinction between whether you have a claim based on conduct after the case is filed and the admissibility of evidence of bad faith after the case was filed.  before the case was filed. That's how, I'm sorry, I think Judge Babcock wrote an opinion making those distinctions. If I could direct the court to the case that Appellant's counsel identified, the Bariga case is a great example. In that case, there was a breach of contract action after an appraisal award, as well as an unreasonable delay of the award of the monies that were paid before the lawsuit was filed. And they used the conduct pre-suit. And the jury came back with an award of about $9,000 for breach of contract. And about, it was six figures for the unreasonable delay claim related to the benefits that were originally underpaid as a result of an apartment fire by an American family. And the jury awarded both the bad faith damages post-suit for the breach of contract that they found was a breach post the lawsuit. And they added those damages to the unreasonable delay damages that was related to conduct pre-suit. They awarded, the court affirmed an award of damages for bad faith occurring after a suit was filed. If you take the position that the breach was concluded after the litigation was filed, yes. Well, are you familiar with the Rabin case, the opinion by Judge, I think it's Judge Babcock from the Federal District Court. Judge, may I grab my case notebook? Yes. Because he has to read. Yeah, Rabin. This analysis made sense to me in interpreting the Colorado cases as distinguishing between allowing admission of evidence from the period of time and awarded damages for that same period. My reading of Judge Babcock's decision and Rabin was consistent with, he refers to Sutherland. Judge Babcock refers to the Sutherland case. And my understanding of the holding is that the insured could prevail on a section 1116 claim, even though filing suit suspended the insurer's duty to negotiate. What's, I think, important about our discussion is the statute itself. The statute does not limit a payment that was made after a lawsuit, because a lawsuit can't insulate an insurance company from bad faith conduct. So if there's an undisputed payment that's owed after the lawsuit was filed, like in our case, where that depreciation check was already owed in April, it was agreed to be paid. The idea that the filing of a lawsuit within a contractual limitation period, which is required to be filed, would somehow insulate the insurance company from their conduct, obviously would be a very poor result and not consistent with the whole purpose behind the delay. Would there be any obligation to amend the complaint under that theory? Because when you filed the case initially and claimed unreasonable delay, it's for unreasonable delay up to that point in time. Even though you could recover for unreasonable delay after the case is filed, why wouldn't you have to amend your complaint to cover that period of time? It's a very interesting question. The reason why it didn't apply in this case was because our allegations were not of any post-litigation conduct. One of the red herring arguments about this case is that all the conduct that we alleged was a result of the unreasonable delay all occurred pre-suit, except for the act of actually cutting the check. That money was owed in April of 2018 before a lawsuit was ever filed. So the academic exercise of this is very interesting. I love this stuff. But the reality is the facts of our case don't support that any evidence was submitted for post-litigation conduct at all, other than actually the check being cut. Does that make sense? The question to the jury was after May 23, 2018, what total amount of insurance benefits, if any, do you find by a preponderance were delayed or denied without a reasonable basis? Are you just saying that there was a delay in payment, but not anything else? Yeah, the jury wasn't even aware when the lawsuit was filed. That wasn't disclosed to the jury at all. That's why it doesn't say when the lawsuit was filed. They were never asked to evaluate pre-suit conduct versus post-suit conduct at all. Well, no, but the dates that are given. Right, that was because of counsel raising the argument under Baker. And so Judge Blackburn wanted to separate out the damages. But if I could address this inconsistency argument, if you look at our brief, we added up all the checks. It's almost to the penny as to the checks that were cut before May 23, 2018, and the checks cut that were delayed after May 23, 2018. And the checks that were delayed in 2018 was based on money that was owed before the lawsuit was ever filed. So this idea that the money doesn't match or the verdict is inconsistent, it's to the penny. They just rounded down. It's literally we asked for $157,000, $700 and some change, and they just rounded it down and gave us the $157,700 before May 23. And then afterwards, they came up with it. So the figure on the verdict form for the post-litigation damages is equal to the checks that came to the insured after that date? Rounded down to the near $700, yes. So they took off the change after the zeros. But both dates correlate perfectly with the checks before and after. Is there a way we can check that? Do we have enough of the record to confirm that? Of course. It's right there in our brief. It's broken down by check. The record. Do we have the record to show that? Yes, I do. May I? I need to get this. Yeah, so what we did on the record is we walked the contractor, John Krugos, through the checks, and we walked the jury through each check, and we explained the basis of the check and why it was delayed or it was promised to be paid. Perfect example. The contractor met the engineer that the insurance company hired at the property. And this was in about April of 2017. The engineer told him, I agree with you. All the roofs need to be replaced, the built-up roofing system of the church as well as the shingle roofing systems at the church. Well, then the insurance company did not pay for those roofs. Instead, they only paid for the shingle roofing systems. So we showed the jury the check. We explained to the jury that the contractor's been telling the insurance company for six months that these roofs need to be replaced. He met the initial adjuster who did not do a thorough inspection. That's all on the record. Then we showed the engineer inspection on the record. It was an engineer named Mark Orr with EFI Global. And then we showed how they didn't pay for all the roofing systems recommended by their own engineer until it was fought for by the insured and the contractor, basically having to do their job for them. And then eventually the checks came. I mean, there's a total of like 11 checks. And they knew the date of the check. Oh, absolutely. It was introduced as evidence. And it was after the date the suit was filed, although the jury wasn't told that was the date. Yeah, there's two checks after May 23rd. And it totals to the $700 number, right? $137,000, $130,000, the $700 number that totaled those two checks. And then before that date, the verdict matches perfectly to the numbers that was presented for the evidence as to what was delayed. So I have no idea the basis of this idea that this is inconsistent with the evidence when it was perfectly consistent with the evidence. Well, could you, at the risk of repeating, but you still have a zero on the breach of contract claim. So is there no inconsistency? Or is there possible inconsistency? If I may, we did win $1. They did find there's a breach of contract. Yay. But number two, the reason why there's no inconsistency is because they just disagreed the HVAC units need to be replaced. And one of the questions they asked us during jury deliberations was whether or not the work was completed. It was a code issue. And code isn't owed until it's incurred. And one of the questions the jury had during deliberations that we got called back in the courthouse about is they asked us, has the work been done? And we told them no. So the best that I can tell is they said, look, this isn't owed because it isn't done. And we disagree with you that the evidence you presented. So you basically, except for the fact that they said there was a breach, but given that it was 0 or 1, $1, basically the jury disagreed with you on the HVAC. Yeah. That's the way I interpreted it. I think what they looked at was the insurance company probably should have paid for the electoral conduit, but because the work wasn't done, it's not owed. I mean, that's my understanding based on the evidence that was presented.  they're separate and distinct claims. It's like apples and oranges. Now, if they would have somehow taken some of that $70,000 that didn't award it for the breach of contract claim, but then somehow awarded it in the unreasonable delay claim, then there'd be an inconsistency based on the evidence. But literally, the evidence is 100% consistent, or the verdict is consistent with the evidence presented. It's almost the exact dollar amount of the checks before May 23, 2018 and after May 23, 2018. If I can conclude with this, the reason why the do-do-good-faith-and-fair-dealing continues through the entire course of the relationship between a policyholder and their insurance company is because you can't take a contractual limitation period for an insurance company of two years, which is enforceable in Colorado, and then say that, hey, they filed a lawsuit. You are now insulated from any conduct that's post-suit, pre-suit, because sometimes these claims continue in negotiation after a lawsuit is filed. It's a very common occurrence that there may be additional inspections after the lawsuit is filed, there's additional conduct. Now, if they choose not to do those, if they choose to take the position that we're defending the case, that's the case case. That's where evidence was only entered that was post-litigation conduct that had nothing to do with the insurance company actually adjusting the claim with the insured. But if they choose to adjust with the insured, that do-do-good-faith-and-fair-dealing continues. Could I ask you just one other question I was interested in? The words covered benefit in the statute, the section 10.3.11.16.1, why don't those words limit what an insured can recover on an unreasonable delay claim? Well, it does limit. OK, good. But how? So here's how it limits it. If you have a very, this particular case we use as an example, the initial payment was less than $50,000 for the entire church's claim. And then over the course of 18 months, the insurance company, after fighting with them and fighting with them, eventually paid over $370,000. And you showed how that conduct was unreasonable through the failure to investigate, the failure to rely on their engineers, the bouncing checks in this case, that evidence was presented. And we presented that to the jury. Those all are covered benefits. Then you get to the breach of contract for what's left. In our case, the conduit and the HVAC units. If the jury would have found that they breached the contract and owed the $70,000, they are well within their purview under the statute to then award that as well as unreasonable delay damages. Because it is now a covered benefit. They determined that it should have been covered, and therefore there was a breach. Does that answer your question, Judge? It do. Thank you, sir. I'm out of time, but I would love to do this all day if we could. Thank you very much. Thank you, counsel. Time is up.